[Civ. No. 20714. Second Dist., Div. One. Oct. 31, 1955.]

R. E. ALLEN, as Receiver, etc., et al., Appellants, v. GEORGE W. SHAVER et al., Respondents.

Irving M. Walker, Richard L. North and Jean Wunderlich for Appellants.

Stanley M. Arndt, Ira L. Sherman and Leon B. Brown for Respondents.

WHITE, P. J.—Primarily, this is an appeal by plaintiff executrix from a judgment of the Superior Court of Los Angeles County in an action by her to enforce an accounting by the surviving partner of her deceased husband. The other parties and other purposes of the action will not be discussed

or considered except in connection with issues to which they are pertinent.

Respondent George W. Shaver is the surviving partner of Clarence Sibert, deceased, and will hereafter be referred to as "respondent." He has adopted as his statement of facts and "first answer to appellant's brief" a detailed opinion filed by the trial court and set forth in respondent's appendix to his brief.

The facts, as stated by the trial court, occupy 11 pages of the printed appendix to respondent's brief. Few references to the record are given in support thereof. The court's findings occupy six pages of the clerk's transcript and contain many long lists of numbers referring to paragraphs of pleadings found true or untrue. Respondent says in his brief that appellant's "statement of facts must be ignored as not correct." Each party has called the court's attention to the failure of the other to comply with certain rules on appeal and urged that therefore the brief of the other should be disregarded. From the reading and consideration of the clerk's and reporter's transcripts, 380 pages of briefs, and numerous, varied and lengthy exhibits, including files and reporter's transcripts in prior actions, we realize that it is a difficult case to state, either clearly or briefly, and we are convinced that both appellant and respondent have made honest attempts to present the matters which they believe should be considered by this court. Consequently, we will not here discuss infractions of the rules on appeal by either party, but will proceed to consider the appeal upon its merits.

Clarence Sibert (hereinafter referred to as "Clarence") died intestate October 8, 1937, leaving his widow Rena, who was then recovering from a nervous breakdown, and their daughter Mary Jane, then a minor. Respondent is the husband of Clarence's sister and the two families were intimate friends.

In 1935, Clarence was employed as a jewelry manufacturer and respondent was employed as a salesman of market and restaurant equipment. Respondent told Clarence there was a need for a shoestring potato cutter and both, as partners, began working evenings, weekends and other spare time to devise one. Many models were made, tested, bent or broken and abandoned. Designs were repeatedly changed and improved, and new models made and tested. June 10, 1936, their application for letters patent was filed and manufacture and sale of the cutters was begun. In September, 1936, the

patent claims were rejected as lacking in novelty, all claims being covered by prior expired patents. The application was subject to amendment. In November, 1936, the partnership business was moved to larger quarters but continued to be a spare time project. Prior to December 1, 1936, more than 60 cutters had been sold at $35 each. February 8, 1937, as partners, respondent and Clarence filed with the county clerk a certificate that they were doing business under the fictitious firm name of S & S Specialty Company. June 14, 1938, a patent was issued in the joint names of Clarence and respondent, on a single combination claim, described in the amendment filed after Clarence's death but based upon a model devised with his assistance.

On August 1, 1938, respondent filed with the State Board of Equalization a statement and secured from them a certificate that he individually was doing business under the name of S & S Specialty Company; that the old S & S Specialty Company, which formerly consisted of George W. Shaver and Clarence E. Sibert, ceased as of the day before.

On or about August 25, 1952, after the judgment next cited had become final, citation under section 571 of the Probate Code required respondent, as surviving partner, to render an account. He caused notice of dissolution of the partnership to be filed with the county clerk, ceased business under the name of "S & S Specialty Company" and published notice that the patent would be sold on September 25, 1952.

On the same day, August 25, 1952, Shaver Specialty Company began doing business at the same location, with the same stock and equipment, the same employees, the same product, and the same customers.

In the instant action, the testimony of respondent's expert witnesses placed the value of the patent at $97.20, $157.20, $300 and $500, and the court found the value of the pending application at the time of Clarence's death to be $97.20. January 24, 1948, respondent alone applied for a new combination patent. According to respondent's own testimony, at least 10,000 cutters had been sold at from $17.50 to $35 each prior to that date. From 1936 to 1948, the handle of each cutter bore the imprints "Keen Kut Shoestringer" and either "Pat. Pend." or the number of the patent issued to Clarence and respondent. From 1948 to the time of the trial of the instant action, each handle bore the imprints "Keen Kut Shoestringer" and the number of respondent's new patent.

We deem it unnecessary to detail the facts constituting the claimed fraud on the part of respondent in obtaining from Rena and Mary Jane a purported assignment to him for the reason that rescission of the assignment has been adjudged by the Superior Court of Los Angeles in Action Number 564297, by judgment dated April 9, 1951, affirmed June 20, 1952, in 111 Cal.App.2d 833 [245 P.2d 514], and hearing thereon denied by the Supreme Court August 14, 1952. In that action it was found that ''At the time of his death Sibert was the owner of record of a half interest in and to the invention covered by said application for Letters Patent and Shaver was the owner of record of a similar one-half interest, but each of such ownerships was subject to an agreement of the parties that the invention should be an asset of said partnership. At the time of his death Sibert was the owner of a one-half interest in said partnership.'' It was then adjudged that ''. . . in 1934 Clarence E. Sibert and George W. Shaver formed an equal partnership under the name, then or subsequently adopted, of S & S Specialty Co., for the creation of the invention covered by said Letters Patent and for the manufacture and sale of said invention, which partnership was in existence at the time of the death of Clarence E. Sibert; that said partnership has not been and the affairs of said partnership have not been wound up and settled by George W. Shaver, the surviving partner; that said partnership is the equitable owner of said Letters Patent and said invention and Rena C. Sibert and Mary Jane Cashin and George W. Shaver are ordered and directed to do everything necessary to vest in said partnership the record ownership of said Letters Patent and said invention.'' Shortly before the trial of the instant action, the parties had formally transferred record ownership of the patent to the partnership.

By said judgment, it was further ordered ''That said partnership and the affairs thereof be wound up and settled by said George W. Shaver, as the surviving partner, and that George W. Shaver account to the estate of Clarence E. Sibert, Deceased, and to Rena C. Sibert, as the administratrix thereof, under the supervision and direction of Department 5 of the Superior Court of the State of California, in and for the County of Los Angeles (being the probate department in which the administration of said estate is pending) for the interest of Clarence E. Sibert in said partnership and in all profits thereof and in all profits realized by Shaver from the operation of the business conducted under the name

of S & S Specialty Co. and by the use of the assets of the partnership from the date of the commencement of the partnership to the date of the winding up and settlement of the affairs of the partnership.''

The court, in its memorandum opinion in the instant action adopted by respondent as his ''first answer'' to appellant's opening brief, demonstrates mathematically that as of the time of his death Clarence Sibert's interest in the partnership was $206.40, that the average capital used in the business over 14.8 years after his death was $50,000 or more; that the total profits for the accounting period was $555,965.92, of which 22.8 per cent or $126,760.22 is attributable to the use of capital; that Sibert's $206.40 interest represents .00412 of the average total capital employed; that the portion of profits which may be attributed to the use of his capital is therefore $522.25; that, however, only 60 per cent of the business was attributable to the use of the patent and therefore only 60 per cent of the profits, or $444.79, could possibly be attributable to Sibert's interest in the patent; that respondent had paid to appellants for the assignment (heretofore rescinded) $305, on which simple interest for the time retained by appellant is $341.60, which provides an equitable offset of $646.60, leaving appellant indebted to respondent in the sum of $126.85.

The court, in his said opinion, states further that:

''We think that under the circumstances the equitable offset heretofore mentioned should be allowed and the account settled as showing nothing due plaintiffs from the profits of the Shaver family's business.

''However, if the precedent heretofore set in these proceedings is broken and just one question of fact is decided in favor of the defendants, the same decision can be arrived at without reference to equity.''

The finding in this regard is as follows:

''That no profits were ever made by the partnership dissolved by the death of Clarence E. Sibert, in the business of said partnership either before or after its dissolution, and that said business sustained an operating loss of $87.20 prior to dissolution, all of which was paid by the defendant George W. Shaver from his own funds; that prior to the death of Clarence E. Sibert said deceased withdrew his entire capital contribution to said partnership and at the time of his death had no interest therein by way of capital contribution; that at said time defendant George W. Shaver had an unreturned

capital contribution therein amounting to $200, together with credit for payment of operating loss hereinbefore mentioned, in the amount of $87.20, making a total credit due to said George W. Shaver in the sum of $287.20. That at the time of dissolution the business of said partnership had no good will of any value and its only asset was the patent application referred to in the pleadings herein, which was then of a value of $97.20, and the total capital of the partnership as of said date, including the patent application and the invention represented thereby, was $297.20. That after payment to said George W. Shaver of said sum of $287.20, representing his contribution to capital and payment of operating loss, there would have remained a net surplus available for division between the partners amounting to $10.00, of which each partner would have been entitled to $5.00, had there been a winding up and settlement of the affairs of said partnership at that time. That in the absence of such winding up and settlement, the interest of said George W. Shaver in said partnership property and assets was in the sum of $292.20 and the interest of said Clarence E. Sibert therein was $5.00.''

The court further found ''that the only use made by the defendant Shaver of said patent was to print its number on the handle of the slicer, until January 24, 1948, when he made a substantial change in design and applied for a new 'combination' patent, which was later issued and is the property of the defendant Shaver and not the property of said original partnership and in which none of the plaintiffs have any interest.''

It was also found that as affecting his own rights, respondent ''was not guilty of any fraud save and except such as may have become established'' by the judgment in the former action, and as to the other respondents ''there was no fraud on the part of defendant George W. Shaver either in connection with the acquisition of the interest of the plaintiffs Rena C. Sibert and Mary Jane Cashin in and to the patent or invention nor in connection with anything that said George W. Shaver did prior thereto or thereafter.''

Judgment was rendered that defendants George W. Shaver and his wife Glennie Shaver are the owners of certain real and personal property involved herein, and ''That defendants George W. Shaver, George W. Shaver, Jr., and Glennie Shaver, are the owners as partners of that certain business known as the Shaver Specialty Company, conducted at 6121 South Western Avenue, in the city of Los Angeles, State of

California, together with the good will, stock in trade, equipment, machinery, tools, supplies, books, records, and other property of every kind and description, located at said address or used in connection with said business, as well as all outstanding debts or moneys due to or on account thereof.

"Second: That plaintiffs, and each of them, have no right, title, interest or claim in and to any of the real or personal property hereinbefore described and that the title of defendants therein as hereinbefore respectively set forth is hereby quieted against any and all claims of plaintiffs.

"Third: That all orders heretofore made in the matter of the administration of the estate of Clarence E. Sibert, deceased, restraining or purporting to restrain the sale of any property whether described herein or not, and more particularly that certain order made in said proceeding on the 30th day of September, 1952, restraining the sale of U. S. Patent No. 2130375, are hereby dissolved.

"Fourth: That the order heretofore made in this action appointing R. E. Allen Receiver is hereby vacated and set aside and said Receiver discharged.

"Fifth: It is ordered that all right, title and interest of George W. Shaver and of the estate of Clarence E. Sibert, deceased, together with all right, title and interest of the partnership formerly consisting of George W. Shaver and said Clarence E. Sibert doing business under the fictitious name and style of S & S Specialty Company, in and to U. S. Patent No. 2130375 be sold by defendant George W. Shaver, as the surviving partner, in the manner provided by law for sales upon execution, except that 30 days notice in writing of the time and place of sale shall be given to plaintiffs Rena C. Sibert, as Administratrix of the estate of Clarence E. Sibert. deceased, Rena C. Sibert and Mary Jane Cashin; and George W. Shaver or any of the parties to this action, as well as other persons, may be purchasers; that from the proceeds thereof, after payment of expenses of sale, there shall first be deducted and paid to said George W. Shaver the sum of $287.30, representing the return of his contribution to capital and operating loss of said partnership; and the balance remaining, if any, divided equally between said George W. Shaver and Rena C. Sibert, as Administratrix of the estate of Clarence E. Sibert, deceased. The Court reserves jurisdiction to set aside or confirm such sale upon motion made by the purchaser or any of the parties to this action within ten (10) days thereafter, but unless such application shall be

made within such period the said sale shall be and become final and conclusive upon the parties thereto and upon all parties to this action.''

From such judgment, plaintiffs prosecute this appeal. In their opening brief appellants state that the substantive questions presented are:

''1. Does the evidence support the finding of the trial court that Shaver has fully, fairly and in good faith accounted to the Sibert Estate and that such accounting shows nothing due to any of the plaintiffs from any of the defendants?

''2. Was the trial court justified in determining that the profits attributable to the use by the defendants of the deceased partner's interest in the dissolved partnership should be determined under the provisions of Section 15042 of the Corporations Code, notwithstanding the plaintiff's contentions (a) that neither said Section 15042 or any other section or sections of the Corporations Code are by their terms applicable to the facts of this case, even if it be assumed that the defendant had not been guilty of fraud in continuing the business of the partnership, and (b) notwithstanding the plaintiff's contention that Shaver as the surviving partner, was a trustee and that, having violated his duties as trustee by fraudulently continuing the business of the partnership for his own benefit, he should be required to account in the manner required of trustees who have fraudulently used the assets of the trust for their own benefit, and (c) notwithstanding the provisions of the Willis judgment (in the former trial) requiring Shaver to account 'for all profits realized by Shaver from the operation of the business conducted under the name of S & S Specialty Co., and by the use of the assets of the partnership from the commencement of the partnership to the date of the winding up and settlement of the affairs of the partnership'?

''In seeking an answer to this question, the court will have in mind the further finding by Judge Willis that Shaver had not wound up the affairs of the partnership.

''3. Was the trial court justified in determining that Glennie and George Junior might acquire interests in the Sibert-Shaver partnership business without giving any consideration therefor and hold that interest and the product thereof unaffected by the trustee status of Shaver as a surviving partner and unaffected by Shaver's fraudulent violation of that trust? And what additional obligations would arise from knowledge on the part of Glennie from the outset and on

the part of George Junior somewhat later, that Shaver was such a trustee and that he had so violated his trust?''

It is at once apparent that appellants' attack upon the findings is grounded on the claim that they are not supported by the evidence, and, as a necessary corollary, that the findings do not support the judgment.

When a judgment is challenged on the ground of ''insufficiency of the evidence'' an appellate tribunal must resolve every doubt and conflict in favor of the judgment in order to give it validity. It is not the function of an appellate court to reweigh the evidence or draw inferences contrary to those drawn by the trial court. Nor will an appellate court pass upon inconsistencies in testimony, but it will presume that the trial court has reconciled and accounted for, to its own satisfaction, all inconsistencies present in the testimony.

The applicable rule is thus stated in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689] : '' 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pac. Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].)''

And this rule governs in a review of the findings of a judge the same as when considering a jury verdict. We have painstakingly examined the voluminous record before us in this case, including the reporter's transcript containing 992 pages, and the clerk's transcript of 178 pages, together with some 58 exhibits. This action is essentially one of fact and the evidence is highly conflicting, but upon the foregoing view of the law we cannot hold that any essential finding in this case is unsupported.

Appellants rely strongly on the judgment entered in the previous action tried before Judge Willis, and which judgment was affirmed on appeal (*Sibert* v. *Shaver*, 111 Cal.App. 2d 833 [245 P.2d 514]).

It is appellants' contention that respondent herein, George W. Shaver, made no attempt to comply therewith and exerted every effort to evade the mandate thereof. In the instant action, the court determined otherwise. The views of the trial court in that regard are set forth in its memorandum opinion, as follows:

"Within five days after the judgment became final Shaver made a bona fide attempt to comply with it. He ceased all activity under the name of S & S Specialty Company, closed his books and ordered a certified public accountant to prepare an account as of that date, filed and published notice of dissolution of the original partnership and notice to creditors, published notice of time and place of sale of the patent, executed an assignment of his one-half interest of record in the patent to the dissolved partnership, and requested the administratrix to execute a similar assignment covering the deceased's one-half interest of record therein. She made no reply to this request, and on September 30, 1952, procured an order from the probate court enjoining the sale of the patent and requiring Shaver to account to the estate for all profits made in his business.

"Being already in preparation, an account was filed on November 10, and as a result of hearings had between that date and January 28, 1953, supplemental accounts were filed furnishing all additional information requested by the administratrix. This accounting appears to have been an honest one, in which original book entries were adequately distinguished from estimates and subsequent charge-backs made by the accountant, in support of an accounting theory employed by him to show an assumed situation in which the Sibert estate had a continuing interest in the business as found by the court in the prior action. No changes were made in the original books which were kept on the basis of sole ownership by the Shaver family."

The court directed an accounting from October 8, 1937, the day of Sibert's death, to August 23, 1952, when, as the trial judge further observed in his memorandum opinion, "Shaver did everything in his power to wind up the business of the original partnership as ordered by the court, but was prevented from doing so by the action of the administratrix in refusing to join in an assignment of the patent to the partnership, as ordered by the court in the prior action, and procuring a restraining order against the sale of it."

No useful purpose would be served by further review of

the testimony. Suffice it to say that, with voluminous and highly conflicting evidence before it, the trial court weighed that evidence, reconciled and accounted for, to its own satisfaction, the inconsistencies therein contained. Since there was substantial evidence to support the conclusions arrived at in the court below, it is not the function of an appellate tribunal to substitute its judgment for that of the trier of facts.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 22, 1955, and appellants' petition for a hearing by the Supreme Court was denied December 29, 1955. McComb, J. pro tem.,* participated therein in place of Edmonds, J. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.